# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF R-G PREMIER BANK OF PUERTO RICO<br><br>     Plaintiff,<br><br>     v.<br><br>VICTOR J. GALÁN-ALVAREZ, et als<br><br>     Defendants | Civil No. 12-1029 (PAD)<br><br>RE:  Breach of Fiduciary Duties, Gross Negligence, Damages<br>Plaintiff Demands Trial by Jury |

### - MOTION TO REOPEN DISCOVERY AND STAY D&O DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P.  56(d) -

**TO THE HONORABLE COURT:**

**NOW COMES** Plaintiff, the Federal Deposit Insurance Corporation (the "FDIC"), in its capacity as receiver ("FDIC-R") for R-G Premier Bank of Puerto Rico ("R-G Premier" or the "Bank"), through its undersigned counsel and respectfully states, alleges and prays:

### I. Introduction

A complex case with over 8 million documents, 20 defendants and facts spanning over 10 years has been submitted for Summary Judgment even though discovery has been limited to five months of document discovery, 4 depositions, and no expert testimony.  FDIC-R – through no fault of its own – has still been denied full discovery. Due process concerns exist because an intractable discovery dispute prevented document discovery from moving forward, but the Court (1) denied the parties' joint request to extend discovery deadlines pending the Court's resolution of that dispute, despite having adopted a discovery plan which specifically provided for extensions in the

1

case of discovery disputes; and (2) declined to resolve the dispute until well after most originally anticipated discovery deadlines had expired.

Notwithstanding the inadequate level of discovery, and as detailed in the FDIC-R's Opposition (ECF No. 255), there is sufficient evidence in the record to defeat the Defendants' Motion for Summary Judgment.   However, if permitted full discovery, FDIC-R will be able to more clearly establish and explain why Defendants' request for summary judgment must be denied. Thus, FDIC-R requests that discovery be reopened and that the adjudication of the pending Motion for Summary Judgment be stayed until the completion of discovery.

## II. Background

This is a lawsuit against the former directors and officers of R-G Premier to recover $257 million in damages caused by their grossly negligent approvals of 60 commercial real estate loans over a period of 10 years and grossly negligent failure to monitor the Bank's lending activities. ECF No. 1.

The case was filed on January 18, 2012. However, the first two district judges to preside over the case recused themselves.  *See* ECF Nos. 54, 74.  After the last recusal, on June 14, 2012, the parties submitted a Joint Proposed Discovery Plan Pursuant to Rule 26(f) (the "Discovery Plan") (ECF No. 83) and a Motion Suggesting Dates for Case Management Order (the "Motion Suggesting Dates") (ECF No. 84).  The parties proposed said dates in good faith, cognizant that the scope and nature of the allegations and the number of parties would lead to substantial discovery. *See* ECF No. 172.  The parties also agreed that, if they were unable to amicably resolve any disagreement under the Discovery Plan, "the close of discovery shall be extended for as much time as is necessary for the parties to resolve the disputed issue before the Court."  ECF No. 83.

A mere five months after the Discovery Plan was filed, just such a scenario ensued. On November 2012, a dispute arose regarding the mechanism for production of Electronically Stored Information ("ESI") and the allocation of associated costs.  FDIC-R filed a Motion for Protective Order (ECF No. 125) and Defendants filed a Motion to Compel (ECF No. 127).  *See also* ECF Nos. 128, 135-38, 143, 165, 171, 209.  As a result, document discovery (and, by extension, depositions of fact and expert witnesses) came to a complete halt as the parties awaited the Court's resolution of their disputes. Defendants highlighted the gravity of the situation in their November 30, 2012 Motion to Compel, noting that the parties would require six months after the Court ruled on the discovery dispute to complete document discovery.  ECF No. 127-1 at 4, n.3.

On March 4, 2013, nine months after their filing, the Court retroactively approved the Discovery Plan and the Motion Suggesting Dates as to the deadlines fixed in its paragraphs 5(a), 5(b), and 5(c).[1]  ECF No. 156.  Subsequently, on March 13, 2013, defendants requested that all depositions be stayed until the ESI dispute was resolved. ECF No. 165.

Recognizing that the retroactively approved discovery schedule had been derailed by the ESI dispute, the parties filed a Joint Motion Requesting that the Court Vacate The Order Entered March 6, 2013 (Dkt. 156) and Modify Case Management Order Deadlines (the "Motion to Modify Deadlines") (ECF No. 172).  Therein, the parties explained that the dates proposed in the Motion Suggesting Dates were no longer appropriate because the ESI dispute had prevented document discovery from concluding by December 2012 as anticipated.  The parties requested that the

---

[1] These deadlines were, in relevant part, the following:
- Document Discovery to be completed by December 6, 2012.
- Expert Disclosures to be made by March 1, 2013.
- Non-expert depositions and non-expert fact discovery to be completed by May 15, 2013.
- FDIC expert reports to be submitted by April 1, 2013.
- Defendants' expert reports to be submitted by May 15, 2013.
- Expert rebuttal reports and depositions submitted by July 12, 2013.

deadlines be expanded and that the case deadlines be re-set once the Court adjudicated the ESI dispute.  ECF No. 172.  About a month and a half later, or two days before the original deadline for non-expert depositions, the Court issued a line order denying the Joint Motion.  ECF No. 200.

On June 12, 2013, almost an entire month after every discovery deadline except for the one pertaining to expert rebuttals had already expired, the Court ruled on the ESI dispute. ECF No. 211.  *See* ECF No. 84, 156.  A month later, on July 11, 2013, the Court granted Defendants' Motion for Protective Order and ordered a stay on depositions "until a reasonable time after the production" of ESI, which was ordered to be completed by August 30. ECF No. 218.[2]  However, this new order caused confusion because the Court had also previously decreed that the time for depositions had passed. (ECF Nos. 84, 156, 218).

By this time, in order to minimize expenses and to preserve the parties' respective resources, the parties informally agreed to effectively stay this litigation while pursuing a settlement. Accordingly, the parties scheduled and participated in mediation before Michael D. Young on August 31, 2013.  The parties did not reach an agreement in said mediation and barely 10 days later, on September 10, 2013, Defendants filed their Motion for Summary Judgment (ECF No. 235).  FDIC-R then filed a Motion for Modification of Schedule Pursuant to Fed. R. Civ. P. 16(b)(4) (ECF No. 243). There, it asserted that there was good cause to reopen discovery.  Thereafter, FDIC-R filed its Opposition to Defendants' Motion for Summary Judgment (ECF No. 255), explaining why even the existing record cannot justify granting summary judgment for Defendants.

---

[2] The Court allowed the depositions of Francisco and Juan Almeida, Ana Mayorga and José Díaz, taken on May 29 and 31, to stand as long as defendants were afforded opportunity to reopen them once all the documents had been produced.  ECF No. 219. These depositions took place over the objection of Defendants. *See* Mayorga Dep. 9:9-21; Díaz Dep. 19:2 – 21:6; F. Almeida Dep. 9:12-20.

Furthermore, it should be noted that one of the original defendants, Joseph Abrahamson, regrettably passed away. *See* ECF No. 122.  The Court recently granted a Motion to Serve one of his heirs by publication ECF No. 297.

### III. Discussion

#### A.    Legal Standard

Rule 56(d) states that:

> If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer considering the motion or deny it; allow time to obtain affidavits or declarations or to take discovery; or issue any other appropriate order.

Fed. R. Civ. P. 56(d).[3]  District courts usually grant properly filed Rule 56(d) motions "as a matter of course."  *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007); *see also Ayala-Gerena v. Bristol Myers-Squibb*, 95 F.3d 86, 92 (1st Cir. 1996) (". . . district courts should construe Rule 56[d] generously . . .").  Deployed appropriately, this rule "safeguard[s] against judges swinging the summary judgment axe too hastily."  *Rivera-Torres v. Rey-Hernández*, 502 F.3d 7, 10 (1st Cir. 2007) (quoting *Resolution Trust Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)).

A litigant who seeks to invoke the rule must act with due diligence to show that his circumstances justify its application.  *Id.*  To that end, the litigant must submit to the trial court an affidavit or other authoritative document[4] showing: (i) good cause for his inability to have

---

[3] Effective December 1, 2009, Rule 56 was amended such that subdivision (d) carries forward without substantial change the provisions of the former subdivision (f). *See* Advisory Committee Note to Rule 56.  As a result, the body of law developed under prior Rule 56(f) applies to the instant Rule 56(d) motion.

[4] The First Circuit has "stated unequivocally that 'a Rule 56(f) proffer may acceptably take the form of "written representations of counsel subject to the strictures of Fed.R.Civ.P. 11.' " *Resolution Trust Company v. North Bridge Associates, Inc.*, 22 F.3d 1198, 1204 (1st Cir. 1994) (quoting *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir. 1988); *see also Vargas-Ruiz v. Golden-Arch Development, Inc.*, 368 F.3d 1, 4 (1s Cir. 2004)

discovered or marshaled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion. *Id.*; *see also Rivera-Almodovar v. Instituto Socioeconómico Comunitario, Inc.*, 730 F.3d 23, 28-29 (1st Cir. 2013).   Moreover, a party seeking to derive the benefit of Rule 56(d) must demonstrate due diligence both in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion has surfaced.  *Rivera-Torres*, 502 F.3d at 10-11.

**B.      Argument**

   **1.      The necessary discovery was beyond the reach of the FDCI-R due to circumstances out of its control.**

   Circumstances outside of its control prevented FDIC-R from concluding discovery prior to the expiration of the discovery deadline.

   <u>First</u>, this is a highly complex case involving facts spanning over 10 years, the approval and underwriting of 60 loans, 20 defendants, and $257 million in alleged damages. As such, it requires extensive discovery, including discovery of millions of electronically stored documents. *See* ECF No. 1.   Anticipating that disputes and delays could emerge during such complex electronic discovery, the parties agreed in the proposed Discovery Plan that if they were unable to amicably resolve any disagreement amongst themselves, "the close of discovery shall be extended for as much time as is necessary for the parties to resolve the disputed issue before the Court." ECF No. 83 at 4.   The Court through order of March 4, 2013 accepted this provision. (ECF No. 156).

---

(same); Maldonado v. Municipality of Barceloneta, 252 F.R.D. 113, 117 n.2 (D.P.R. 2008) (same). Thus, the instant motion constitutes an acceptable form of Rule 56(d) relief. No separate affidavit is required.

Second, the ESI dispute which halted discovery was a legitimate dispute which arose in the course of this litigation and which the parties attempted in good faith to amicably resolve before seeking the Court's adjudication.  This dispute involved an issue (ESI) that is novel to both FDIC-R and the U.S. courts in general.  As such, there were few to no clearly applicable precedents to aid in resolving it quickly.

Third, as Defendants explained in their Motion for Protective Order (in which they requested the stay of all bank employee depositions until the resolution of the ESI dispute), "the negotiated and agreed-upon Proposed CMO that the Parties submitted to the Court clearly contemplated that document discovery would conclude prior to oral discovery beginning, consistent with the 'majority of cases, [where] interrogatory and document discovery are completed prior to depositions.' " ECF No. 165 at 5 (citing *Hogan v. DC Comics*, No. 96-CV-1749, 1997 WL 570871, at *6 (N.D.N.Y. Sept. 9, 1997).  The discovery in this case is unusual in that it is asymmetric. That is, FDIC-R has possession of around ninety percent of the documents at issue. Thus, although FDIC-R had possession of the document evidence, its discovery to Defendants was held up by the ESI dispute.  Therefore, if FDIC-R had chosen to bulldoze over Defendants and begin drafting expert reports and deposing the directors before the resolution of the ESI dispute, it would have been impossible for Defendants to properly and fully prepare for the depositions or to provide their experts with material to evaluate.  As such, FDIC-R, in good faith and out of a consideration of fairness, refrained from deposing directors until the ESI dispute was resolved. [5] FDIC-R contends that this constitutes good cause. [6]

---

[5] FDIC-R discontinued the scheduling of all new depositions except for the ones already scheduled: those of Jose Diaz, Juan and Francisco Almeida, and Ana Mayorga. . These were initially scheduled for prior to the applicable original deadline. FDIC-R rescheduled them for May 29 and 30 to accommodate other parties because it believed it

<u>Fourth</u>, retroactive and often anachronistic scheduling has plagued this case. The Court did not adopt or issue any scheduling guidance until **nine** months after the Discovery Plan and Motion Suggesting Dates was filed. See ECF Nos. 83, 84, 156. By this time, the originally proposed schedule had been made obsolete by the ESI dispute. The parties recognized this as soon as the Discovery Plan was adopted by the Court and accordingly, via Joint Motion, requested an extension of discovery until the ESI dispute was resolved. ECF No. 172. As noted above, the Discovery Plan that the parties negotiated and that the Court approved contemplated such an extension. See ECF No. 83 at 4. Nevertheless, in a line order issued on May 13, 2013, over two months later, the Court denied the aforesaid Joint Motion. ECF No. 200. By then, there were only two days left for non-expert depositions under the initial Discovery Plan.

The Court issued an Order resolving the ESI dispute on June 12, 2013, almost seven months after it was filed. ECF No. 211. In said Order, the Court ordered FDIC-R to produce "the discoverable ESI in its possession in accordance with the procedure established in the Discovery Plan." ECF No. 211 at 2. However, by this time, all the original discovery deadlines had passed except for the one pertaining to rebuttal expert reports, and the Court had already declined to extend them. *See* ECF No. 84, 200, 211. This caused considerable confusion. To further add to the confusion, a month later, on July 11, 2013, the Court granted Defendants' Motion for a Protective Order and ordered a stay on depositions "until a reasonable time after the production" of ESI,

---

would facilitate settlement negotiations and increase the likelihood of successful mediation. Those depositions were taken over the objection of Defendants. *See* Mayorga Dep. 9:9-21; Díaz Dep. 19:2 – 21:6; F. Almeida Dep. 9:12-20.The Court later retroactively allowed the depositions to stand as long as defendants were afforded opportunity to reopen them once all the documents had been produced. ECF No. 219.

[6] It "is axiomatic that parties must act in good faith during discovery . . ." *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88, 92 (1st Cir. 2012).

which was ordered to be completed by August 30 (ECF No. 218).   Again, by this time, the discovery schedule had already expired and the Court had denied the Joint Motion to modify it.

Overall, the scheduling of this case has been, for reasons beyond the FDIC-R's control, consistently obsolete, confusing and impracticable.   FDIC-R respectfully submits that this constitutes good cause.

<u>Finally</u>, it should be noted that there is currently no pre-trial or trial date set in the instant case.   As such, a reopening of discovery would not alter or affect the Court's –or the parties'– already existing schedule.

### 2.   FDIC-R has a plausible basis that additional facts, which would suffice to defeat the pending summary judgment motion, exist and can be retrieved within a reasonable time.

Defendants' Motion for Summary Judgment is premised on three main arguments.   First, they argue that the Business Judgment Rule[7] immunizes them from liability from the Count II claims (grossly negligently approval of loans) on eleven specific loans.[8] *See e.g.*, ECF No. 235 at 10-13, 19-20, 28, 35-37; *see also generally* ECF No. 235-1. Second, Defendants argue that an "unforeseeable" economic recession was the intervening cause of the damages claimed by the FDIC. *See* ECF No. 235 at 2-3, 17-18, 40-42.   Third, Defendants argue that they did not fail to monitor the Bank's lending because they maintained an oversight structure, and also took

---

[7] The Business Judgment Rule is a "presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (emphasis added).

[8] Although Defendants' Appendix A (ECF No. 235-1) purports to refer to nine numbered loans, it actually discusses eleven of the sixty loans identified in the Complaint. Specifically: two loans to Alturas del Bosque, S.E. (Compl. at ¶¶ 123-125; 126-128); two loans to Unica Realty (id. at ¶¶ 111-113; 114-116); and single loans to each of R.J. Development Corp. (id. at ¶¶ 105-107); Jalexis, Inc. (id. at ¶¶ 72-74); Quantum Development Corp. (id. at ¶¶ 93-95); Trilito, Inc. (id. at ¶¶ 177-179); CT Development Corp. (id. at ¶¶ 186-188); and Joel Katz (id. at ¶¶ 219-222).   Defendants' did not attack the remaining 49 target loans.  *See* ECF No. 272.

supposedly decisive action to modify that structure when faults became apparent.  ECF No. 235 at 10-13, 16-19, 25-27.  In its Opposition (ECF No. 255), FDIC-R countered by, *inter alia*, (1) noting that the documents relied on by Defendants to invoke the Business Judgment Rule also included some gross departures from the Bank's written credit policy; (2) presenting emails from Defendants acknowledging at the time in question that the recession was in their midst and noting that Puerto Rico law puts the burden on Defendants to prove that the alleged intervening cause was the only cause of the damages; and (3) providing a sworn statement of former VP of the Internal Loan Review Department, Johana Quiñones which evidenced the severe systemic deficiencies in the structure of RG Premier's lending and its supervision.

FDIC-R has already established that enough evidence is in the record to rebut Defendants' arguments and controvert the important facts on which the D&O's Motion for Summary Judgment is premised.  *See* ECF Nos. 255, 272.  However, there is additional evidence which would further support and more clearly show why the Defendants' motion must be denied, but which was not obtained due to the previously described inability to complete discovery.

First, as to the Business Judgment Rule, the same can be defeated if, prior to making the decision, the directors failed to inform themselves of all material information reasonably available. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 367 (Del. 1993). The term "material" is used in this context to mean information that is relevant and important in making the decision.  *Brehm v. Eisner*, 746 A.2d 244, 260, n.49 (Del. 2000).  What information is, in fact, material in approving a bank loan? Due to the lack of expert testimony, both Defendants and FDIC-R were left to mostly rely on the Bank's written credit Policy to attempt to answer this question.  *See* ECF No. 235-1; ECF No. 255-2. Although FDIC-R maintains such differing interpretations of what information is material to the

approval of a loan (and therefore whether its absence revokes the Business Judgment Rule) constitute material issues of fact sufficient to survive summary judgment, expert testimony would be greatly beneficial to establishing the existence of such a controversy.  Such testimony would allow FDIC-R to contrast the Defendants' conduct with respect to the approved loans with banking best practices, and not just with the standards set forth in the Bank's written credit policy. This would in turn assist the FDIC-R in explaining to a reasonable jury how Defendants were grossly negligent with respect to the target loans.  Moreover, expert testimony would also assist the fact-finder in understanding the evidence given the technical nature of the case.

Additionally, Defendants rely heavily on sworn statements from former directors Gilberto Rivera-Arreaga and Rafael Nin-Torregrosa, neither of whom was ever deposed.  ECF Nos. 235-4, 235-5.  Therein, both directors aver, *inter alia*, that they "only approved credits that [they] believed to be well-vetted and reasonable business decisions in the best interest of the Bank."  ECF No. 235-4 at ¶ 11; 235-5 at ¶ 9.  FDIC-R, in its Opposition, pointed to the loan approval documents to controvert the veracity of these averments.  A deposition of Rivera-Arreaga and Nin-Torregrosa would have permitted FDIC-R to confront them with the blatant violations of the written credit Policy and obvious red flags present in the offering tickets. This would have allowed FDIC-R to controvert whether they truly could have believed that the approvals were well-vetted and reasonable. However, since no director was ever deposed, FDIC-R must instead rely on inferences to rebut direct testimony of non-deposed persons.

Further, while documentary evidence contains important information about the underwriting of loans, such evidence does not prove whether that information was **in fact** read, considered, and deliberated by the directors. To that effect, the D&O's rely solely on Nin and

Rivera's statements and on the generalities in the Directors' and Joint Loan Committee minutes, to argue that they actually reviewed those documents and deliberated about their contents so as to make informed decisions. *See e.g.*, D&O's SUM ¶¶ 98, 112, 115, 130, 141. FDIC-R maintains that the information –even if it was read and considered- was insufficient and therefore results in a rebuttal of the Business Judgment Rule. However, if permitted to depose Defendants, FDIC-R could actually confront them with the missing information and therefore further support its opposition to Defendants' request for summary judgment.

These disclosures, reports, and depositions could be arranged within a reasonable amount of time, especially now that the discovery disputes have concluded and the parties have discovered and are familiar with the relevant documentary evidence.

**3.      FDIC-R exercised due diligence in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion surfaced.**

FDIC-R exercised due diligence prior to the emergence of the summary judgment motion. As previously detailed, both parties attempted, pursuant to the Discovery Plan, to amicably resolve their disputes and prevent unnecessary delays.[9] That having failed, the parties filed a Joint Motion to Modify Discovery Deadlines that the Court subsequently denied. Said motion was timely filed over a month before the expiration of said deadlines but denied by the Court (ECF No. 200). Therefore, FDIC-R was diligent –as were Defendants- in requesting an extension of the discovery deadlines.

---

[9] The Discovery Plan included a provision that, were the parties unable to amicably resolve any disagreement amongst themselves, "the close of discovery shall be extended for as much time was is necessary for the parties to resolve the disputed issue before the Court."

Furthermore, after the filing of Defendants' Motion for Summary Judgment (ECF No. 235) and before filing its opposition, FDIC-R filed a Motion for Modification of Schedule (ECF No. 243) wherein it explained that the ESI dispute had significantly delayed discovery and requested that discovery be re-opened.[10] Also, FDIC-R referenced Fed. R. Civ. P. 56(d) in its Opposition.  *See* ECF No. 255 at 20, n.7.

The First Circuit has held that a Rule 56(d) motion should be filed "at least, at some time before the nisi prius court passes on [the summary judgment motion]."  *Nieves-Romero v. U.S.*, 715 F.3d 375, 381 (1st Cir. 2013); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 44 (1st Cir. 1998) (a Rule 56(d) motion "normally should precede or accompany the response to the summary judgment motion **or follow as soon as practicable thereafter**.") (emphasis added).  The instant motion satisfies that requisite; at the time of filing, the Court has yet to adjudicate the pending summary judgment motion.

Finally, it should be noted that no pre-trial conference or trial date was ever set in the instant case.  As such, a reopening of discovery and the re-setting of deadlines will not prejudice the Court's schedule or the parties' preparations.

## IV. Conclusion

This is a complex case. FDIC-R understands that all parties have been equally proactive. This is not a case in which one of the parties dilates and delays discovery or requests extension after extension.  Rather, discovery was held up by a legitimate controversy involving a novel topic (ESI).  In their initial discovery plan, the parties agreed (with the Court's approval) to extend

---

[10] This motion was denied by the Court, not explicitly on the merits but rather because it was not filed "in connection with the Motion for Summary Judgment under Fed. R. Civ. P. 56(d)."  ECF No. 295.  FDIC-R in the instant motion remedies this and re-states the arguments made in said motion.

discovery deadlines in the event that such disputes arose.   However, even though the circumstances more than warranted the extension, and FDIC-R reasonably relied on the Court's implicit approval of the initial discovery plan's allowance for extensions of deadlines if discovery disputes arose, the requested extension was denied through a line order. As a result, this $257 million case involving 60 loans, 20 defendants, and over 8 million documents, is currently pending resolution after only 4 depositions, no expert disclosures or depositions, and inadequate document discovery that is even now incomplete. These circumstances raise serious due process concerns.

**WHEREFORE**, in view of the foregoing, FDIC-R respectfully requests that adjudication of Defendants' Motions for Summary Judgment be stayed, and discovery be reopened for a reasonable time and upon a new case management order to be agreed upon by the parties.  Once discovery is concluded, the parties should be allowed to supplement their summary judgment briefs and exhibits with the new evidence.

I hereby certify that on April 14, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 14th day of April, 2014.

s/Jairo Mellado-Villarreal
Jairo Mellado-Villarreal, 208112
Attorneys for FDIC-R
MELLADO & MELLADO-VILLARREAL
165 Ponce de León Ave., Suite 202
San Juan, Puerto Rico  00917-1233
Tel. 787-767-2600/Fax 787-767-2645
E-mail jmellado@mellado.com

14

s/Dennis S. Klein
Dennis S. Klein, Esq., *pro hac vice*
klein@hugheshubbard.com
Attorney for FDIC-R
Hughes Hubbard & Reed LLP
201 S Biscayne Blvd.
Suite 2500
Miami, Fl 33131-4305
Tel. 305-358-1666/Fax. 305-371-8759

s/Steven C. Morrison
Steven C. Morrison, Esq., *pro hac vice*
Attorney for FDIC-R
Federal Deposit Insurance Corporation
3501 N. Fairfax Dr. Ste. B7024
Arlington, VA 22226
Tel. 703-516-5029 direct
E-mail stemorrison@fdic.gov