IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF R-G PREMIER BANK OF PUERTO RICO,**<br><br>Plaintiff,<br><br>v.<br><br>**VICTOR GÁLAN-ÁLVAREZ, et al.,**<br><br>Defendants. | CIVIL NO. 12-1029 (PAD) |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

The Federal Deposit Insurance Corporation as Receiver ("FDIC-R") of R-G Premier Bank of Puerto Rico ("R-G") initiated this action against former directors and officers of R-G ("D&Os"), some of their spouses and conjugal partnerships, and their liability insurer, seeking recovery of $257 Million in damages allegedly caused by the D&Os' negligence. Before the court is "The D&Os' Motion for Advancement of Defense Costs from the Side-A Policy" (Docket No. 441), which XL Specialty Insurance Company ("XL") opposed (Docket No. 463). The D&Os replied (Docket No. 472), and XL sur-replied (Docket No. 477). For the reasons below, the D&Os' request is DENIED.

**I.     BACKGROUND**

The D&Os purchased from XL two policies for coverage in the event that a breach of fiduciary claim be filed against them, namely, the "Management Liability Policy," and the "Side-A Policy." On December 23, 2010, XL received formal notice of the FDIC-R's claims against the D&Os (Docket No. 441 at p. 10). On January 10, 2011, XL acknowledged its duty to advance defense costs, but only under the Management Liability Policy, claiming that the Side-A Policy

provides coverage for loss, except to the extent that such loss is paid for by any other insurance program or as indemnification from any source. Id. at p. 11.

The D&Os request that defense costs be advanced under the Side-A Policy in a pro-rata basis together with those advanced under the Management Liability Policy. They allege the Side-A Policy is not a "true excess policy," for when insurers write such policies "they (1) call them 'Excess' in the title; (2) refer to the underlying, primary policies; (3) list an exhaustion amount necessary to trigger the excess policy; and (4) require the insured to maintain primary insurance as a condition precedent to excess coverage." Id. at p. 7.

In the D&O's view, both policies were purchased to cover the same risk, and contain mutually repugnant "other insurance" clauses, pursuant to which each policy looks to the other for payment. Id. at pp. 8-9. To that end, they claim to be entitled – under Puerto Rico law and First Circuit precedent – to the advancement of the defense costs under the Side-A Policy, because (1) there is a remote possibility of coverage under it; (2) they have suffered and will continue to suffer irreparable harm absent an order from the court; and (3) the balance of equities and public interest favors such an advancement. Id. at p. 21.

XL argues that (1) it has never declined to fund the D&Os defense but in fact, has paid $10.5 million as part of this case; (2) more than $14 million remain on the limit of the Management Liability Policy, so the D&Os will not suffer any irreparable harm in the event the motion is denied; (3) the premium for the Side-A Policy was significantly less than that pertaining to the Management Liability Policy;[1] and (4) the insuring agreements included in the two policies provide that

---

[1] Specifically, XL maintains that the total premium for the Management Liability Policy was $1,700,000.00, whereas the total premium for the Side-A Policy was $235,000.00.

disbursement of funds under the Side-A Policy will not be triggered as long as XL is paying for the defense under the Management Liability Policy (Docket No. 463 at pp. 4-13).

## II.     **DISCUSSION**

A request for an order requiring the insurer to advance defense costs to former directors of a failed bank sued by the FDIC-R is properly treated as an application for a mandatory preliminary injunction. W. Holding Co. v. AIG Ins. Co., 748 F.3d 377, 382-383 (1st Cir. 2014). When evaluating such a request, courts must take into account: (1) the moving party's likelihood of success on the merits; (2) the possibility of irreparable harm absent an injunction; (3) the balance of equities; and (4) the impact (if any) of the injunction on the public interest. Id. at 383. Likelihood of success is the main bearing wall of this framework. Id.

A. Likelihood of Success

An insurance company must advance defense costs if a complaint against an insured includes claims that create even a "remote possibility" of coverage. Id. at 384. This is a pretty low standard. Any doubt about an insurer's advancement obligation must be resolved in the insured's favor, for the purpose of insurance policies is to provide protection for the insured. Id. (citing Pagán Caraballo v. Silva Delgado, 22 P.R. Offic. Trans. 96, 103 (P.R. 1988) and Triple-S Mgmt. Corp. v. Am. Int'l Ins. Co. of P.R., 2009 WL 2419937 at *12 (TCA May 19, 2009)). However, where a contract's wording is explicit and its language unambiguous, the parties are bound by its clearly stated terms and conditions, with no room for further debate. Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64 (1st Cir. 2012); see also, Vulcan Tools of P.R. v. Makita U.S.A., Inc., 23 F.3d 564, 567 (1st Cir. 1994)(holding that "where no doubt or ambiguity lies amidst the meaning of a contract's terms, the court cannot dwell on the alleged intent of the parties at the time they entered into the contract").

Federal Deposit Insurance Corporation, v. Galán-Álvarez, *et al.*
Civil No. 12-1029 (PAD)
Opinion and Order
Page 4

The Side-A Policy makes payment contingent upon the insured' loss not being paid for by any other "Insurance Program or as indemnification from any other source" (Docket No. 463, Exh. 2 at p. 9, § I).[2] It provides that "all coverage under this policy shall be specifically excess over, and shall not contribute with any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess, or otherwise." Id. at p. 12, § IV(B)(1)(ii). In turn, it defines "Insurance Program" as "any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance, and any other existing insurance under which coverage may be owed." Id. at p. 10, § II(I). Consequently, its terms and conditions configure an excess policy rather than a co-primary one. Advancement of costs thereunder is not available until after funds pertaining to the Management Liability Policy are exhausted. Not even a remote possibility of coverage requiring payment now exists.

B. Irreparable Harm

The D&Os complain they will suffer an irreparable harm if XL does not advance defense costs from the Side-A Policy. Courts have consistently held that inability to receive defense costs under a policy represents an immediate and direct injury justifying the advancement of costs. See, XL Specialty Ins. Co. v. Level Global Investors, L.P., 874 F.Supp.2d 263, 272 (S.D.N.Y. 2012) (insureds would suffer irreparable harm in absence of injunction to access legal defense costs under

---

[2] In this regard, the "Classic A-Side Management Liability Insurance Coverage Form" provides, in part, that,
the insurer will pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act, except to the extent that such Loss is paid by any other Insurance Program or as indemnification from any source. If Loss is not paid by such other Insurance Program or as indemnification from any source, the Insurer will pay covered Loss on behalf of the Insured Persons, subject to all the terms, conditions (including but not limited to Condition IV(B)) and limitations of the Policy.
Docket No. 463, Exh. 2 at p. 9, § I.

Case 3:12-cv-01029-PAD-BJM   Document 497   Filed 08/17/15   Page 5 of 6

Federal Deposit Insurance Corporation, v. Galán-Álvarez, et al.
Civil No. 12-1029 (PAD)
Opinion and Order
Page 5

the policy); Great Am. Ins. Co. v. Gross, 2005 WL 1048752, *4 (E.D.Va. May 3, 2005) (preliminary injunction compelling insurer to resume advancement of defense costs).

But XL points out – and the D&Os do not contest – that it has never declined to advance funds for the D&Os' defense. In fact, it has advanced approximately $10.5 million under the Management Liability Policy, while $14.5 million remain on the limit of that policy (Docket No. 463, Exh. 1 at p. 2). And it will continue to fund the D&Os defense so long as funds are available under the Management Liability Policy. In the event those funds are exhausted, it may then advance defense costs under the Side-A Policy. As a result, the D&Os face no imminent risk of irreparable harm – at this time – as is required to receive the relief they seek.

C. Balance of Equities and Impact on Public Interest

It is in the public interest to see parties' honoring their contractual commitments, insurers' complying with their obligations, and insureds' receiving the benefit of what has been paid for. W. Holding Co., 748 F.3d at 380. Under the terms of the insurance contracts executed between the parties, XL agreed to advance the costs of the D&Os' defense under the Management Liability Policy until such funds are exhausted, at which time the costs may be advanced under the Side-A Policy. To date, XL has done exactly that. Accordingly, balance of equities and public interest are served by requiring the parties to abide by the terms of these agreements.

D. Remaining Issue

Finally, the fact that both the Management Liability and the Side-A policies contain mutually repugnant "other insurance" clauses is immaterial, for neither one has been invoked to deny coverage to the D&Os. What is more, XL is currently providing coverage under the Management Liability Policy, and substantial funds remain available therein. In consequence, the D&Os arguments in this regard are misplaced. See, Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 61 (1st

<u>Federal Deposit Insurance Corporation,</u> v. <u>Galán-Álvarez,</u> *et al.*
Civil No. 12-1029 (PAD)
Opinion and Order
Page 6

Cir. 2000)(discussing how "other insurance" clauses are not problematic in cases – such as here – where both policies interact harmoniously and the claim goes wholly insured).

### III.   <u>CONCLUSION</u>

In view of the foregoing, and because the Side-A Policy is an excess policy whose funds are not available until after those pertaining to the Management Liability Policy are exhausted, the court DENIES "The D&Os' Motion for Advancement of Defense Costs from the Side-A Policy" (Docket No. 441).

**SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of August, 2015.

<u>s/Pedro A. Delgado-Hernández</u>
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge
